1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DIANA PHARRIS,                          )   Case No.: 1:10-cv-01323 JLT
                                             )
12               Plaintiff,                  )   ORDER DIRECTING THE ENTRY OF
                                             )   JUDGMENT IN FAVOR OF DEFENDANT
13       v.                                  )   MICHAEL J. ASTRUE, COMMISSIONER OF
                                             )   SOCIAL SECURITY, AND AGAINST
14                                           )   PLAINTIFF DIANA PHARRIS
     MICHAEL J. ASTRUE,                      )
15   Commissioner of Social Security,        )   ORDER DENYING PLAINTIFF'S MOTION
                                             )   FOR SUMMARY JUDGMENT
16               Defendant.                  )
                                             )   (Doc. 14)
17   _____        )

18         Diana Pharris ("Plaintiff") asserts she is entitled supplemental security income under Title

19   XVI of the Social Security Act.  Plaintiff argues the administrative law judge ("ALJ") improperly

20   rejected her diagnosis of a major depressive disorder, severe, with psychotic features.  In addition,

21   Plaintiff asserts the ALJ failed to provide clear and convincing reasons for finding her subjective

22   complaints were not credible.  Therefore, Plaintiff seeks judicial review of the administrative

23   decision denying her claim for benefits.  For the reasons set forth below, the Court **AFFIRMS**.

24                          **PROCEDURAL HISTORY**[1]

25         Plaintiff filed an application supplemental security income on April 20, 2006, alleging

26   disability beginning August 25, 2004.  AR at 114-19.  The Social Security Administration denied her

27   _____

28         [1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

                                              1

1   claim initially on January 16, 2007, and upon reconsideration on July 19, 2007.  *Id.* at 67, 78.  After

2   requesting a hearing, Plaintiff testified before an ALJ on December 17, 2008.  *Id.* at 17.

3   The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order

4   denying benefits on May 15, 2009.  AR at 5-16.  Plaintiff requested a review by the Appeals Council

5   of Social Security, which denied review of the ALJ's decision on May 21, 2010.  *Id.* at 1-3.

6   Therefore, the ALJ's determination became the decision of the Commissioner of Social Security

7   ("Commissioner").

8                                              **STANDARD OF REVIEW**

9          District courts have a limited scope of judicial review for disability claims after a decision by

10  the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact,

11  such as whether a claimant was disabled, the Court must determine whether the Commissioner's

12  decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The

13  ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

14  standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y*

15  *of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

16         Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a

17  reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S.

18  389, 401 (1971), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938).  The record as a whole

19  must be considered, as "[t]he court must consider both evidence that supports and evidence that

20  detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

21                                             **DISABILITY BENEFITS**

22         To qualify for supplemental security income under Title XVI of the Social Security Act,

23  Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically

24  determinable physical or mental impairment that has lasted or can be expected to last for a

25  continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be

26  considered to have a disability only if:

27         physical or mental impairment or impairments are of such severity that he is not only
           unable to do his previous work, but cannot, considering his age, education, and work
28         experience, engage in any other kind of substantial gainful work which exists in the

                                                    2

1   national economy, regardless of whether such work exists in the immediate area in
2   which he lives, or whether a specific job vacancy exists for him, or whether he would
    be hired if he applied for work.

3   42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

4   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  When a claimant establishes a prima facie case of

5   disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other

6   substantial gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

7   ## DETERMINATION OF DISABILITY

8         To achieve uniform decisions, the Commissioner established a sequential five-step process

9   for evaluating a claimant's alleged disability.  20 C.F.R. §416.920(a)-(f) (2010).  The process

10  requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the

11  period of alleged disability, (2) had medically determinable severe impairments (3) that met or

12  equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and

13  whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the

14  ability to perform other work existing in significant numbers at the state and national level.  *Id.*  In

15  making these determinations, the ALJ must consider objective medical evidence and opinion

16  (hearing) testimony.  20 C.F.R. §§ 416.927, 416.929.

17  A.   Relevant Medical Evidence

18        *Physician's Opinions*

19        Dr. Shireen Damania completed a psychiatric evaluation on August 22, 2006.  AR at 217-21.

20  Plaintiff stated: "I have anxiety, sadness, feel worthless.  I have been told that I have manic

21  depression."  *Id.* at 217.  She reported that she began seeing a therapist twice a week in January

22  2006, and saw a psychiatrist once a month, but did not think her medication helped.  *Id.*  Also,

23  Plaintiff reported that she had used methamphetamine, but had not used it "in the last three to four

24  years."  *Id.* at 218.  With regard to activities of daily living, Plaintiff reported that she fixed simple

25  meals, took care of her own hygiene and grooming, watched television, and attended church.  *Id.*  Dr.

26  Damania observed, "[Plaintiff] was oriented to time, place and person.  Memory for recent and past

27  recall was intact….She recalled two out of three objects in three minutes.  She was functioning in the

28  average range of intellectual functioning."  *Id.* at 219.  Further, upon testing of Plaintiff's memory,

3

Dr. Damania opined Plaintiff's attention span was within normal limits, and "[n]o difficulties were noted in memory, concentration, persistence and pace." *Id.* at 219-20.   Dr. Damania concluded Plaintiff was "able to understand, carry out and remember three and four step job instructions in a work-like setting." *Id.* at 220. Also, Dr. Damania believed Plaintiff was able to respond appropriately to usual work situations, co-workers, supervisors, and the general public. *Id.*

On January 10, 2007, Dr. Gina Rivera-Miya completed a mental residual functional capacity assessment and psychiatric review technique form.  AR at 227-40.  Dr. Rivera-Miya believed Plaintiff had affective and anxiety-related disorders.  *Id.* at 230.  She opined Plaintiff was "moderately limited" in the ability to understand, remember, and carry out detailed instructions, and had moderate difficulties with maintaining concentration, persistence, and pace.  *Id.* at 227, 238. Likewise, she believed Plaintiff had moderate limitations social functioning and her ability to interact appropriately with the general public.  *Id.* at 228, 238.  In all other areas of social interaction, memory, concentration, and adaption, Dr. Rivera-Miya believed Plaintiff was "not significantly limited." *Id.* at 227-28.  Further, Plaintiff had mild limitations in her activities of daily living.  *Id.* at 238.  Therefore, Dr. Rivera-Miya concluded Plaintiff was able to understand and remember short and simple instructions, and to maintain attention and concentration at the level required for substantial gainful activity.  *Id.* at 229.

*Mental Health Treatment Notes*

In October 2005, Plaintiff began to receive treatment from Fresno County Mental Health upon referral from her primary care physician, Dr. Hansen.  *See* AR 349, 351.  On October 13, 2005, Plaintiff had a comprehensive assessment by Sharon Silva, a licensed clinical social worker.  *Id.* at 351-55.  Plaintiff reported she was tired, frustrated, cried a lot, had no patience, and had poor focus. *Id.* at 351.  According to Plaintiff, her symptoms began in 1981-1988 during her first marriage to an abusive man.  *Id.*  Plaintiff expressed depression regarding her inability to "hold down a job" and "get enough rest." *Id.* at 352.  Also, Plaintiff indicated she had auditory hallucinations and had a fear of someone coming in while she slept.  *Id.* at 354.  Ms. Silva opined Plaintiff's thoughts were rational, coherent, and within normal limits.  *Id.*

In January 2006, Plaintiff's treating physician observed Plaintiff had "multiple psychosocial and physical stressors exacerbating her current symptoms." AR at 318. Therefore, Dr. Soo Chun recommended Plaintiff have individual therapy sessions, which she began with Patricia Lometti, a licensed clinical social worker with Fresno County Mental Health, on January 20, 2006. *Id.*; AR at 344-45. Her goals in therapy included "to increase her sense of personal power and control over her life . . . to build her self esteem and increase her motivation and energy level." AR at 260. In therapy sessions, Plaintiff discussed topics such as her relationships with her parents, son and boyfriend; her desire to be independent; and her history of sexual abuse. *See, e.g.*, AR at 257-58, 261, 264, 278-79, 325, 344, 393, 402. Ms. Lometti opined Plaintiff's physical pain "seem[ed] to be greatly exacerbating her depression." *Id.* at 287.

B.   Hearing Testimony

*Plaintiff's Testimony*

Plaintiff testified before an ALJ on December 17, 2008. AR at 18. Plaintiff reported she had completed high school and did not have any vocational training. *Id.* at 22. Plaintiff stated she had not worked since March 1, 2004, and that she last worked as a bartender, though she did not mix drinks. *Id.* at 23, 43. She reported that she left the job because she "couldn't work" and "was in a lot of pain." *Id.* Plaintiff said her difficulty with keeping jobs was a combination of pain and concentration. *Id.* at 62-63.

Plaintiff stated she suffered fibromyalgia, depression, "a lot of back pain and neck pain." AR at 24. Further, Plaintiff reported that she had restless leg syndrome, and she had spasms approximately three times a day, which lasted for "20 minutes to a half hour." *Id.* at 27.

According to Plaintiff, her fibromyalgia meant that she had "pressure points" in the back of her neck, arms, lower part of her back, and her legs. AR at 26. In addition, Plaintiff stated she had "two discs out in the back of [her] neck." *Id.* at 24. Plaintiff believed the pain in her neck caused her to suffer bad headaches and have difficulty with lifting and bending. *Id.* at 25. She explained the pain in her neck made her shoulders and arms hurt. *Id.* Plaintiff reported constant pain in the lower, middle part of the back that traveled to each side of her hip and was "very sharp and very painful." *Id.* Plaintiff took Vicodin, which she said made her "very tired, sleepy," and unable "to

5

comprehend." *Id.* at 25.  Plaintiff took Lyrica, and used over-the-counter patches to try to alleviate the pain. *Id.* at 26.

Plaintiff reported that she heard voices when alone and when she tried to go to sleep at night. AR at 28.  Plaintiff stated the voices were "like a whispering around [her]," and she could not make out any actual words. *Id.* at 28-29.  She stated doctors had tried several medications, but she had to switch because some made her sick, but the medication made her tired and helped her sleep at night. *Id.*  Also, Plaintiff went to therapy every two weeks. *Id.* at 30.

Plaintiff testified that she had anxiety attacks three or four times a day where her blood pressure rose and she got "really nervous." *Id.* at 31.  Plaintiff stated she could not be around crowds of people, because she would get overwhelmed. *Id.*  She reported that "[b]eing around four or five people" made her feel uncomfortable, and she did not socialize or go to events such as picnics and barbeques. *Id.* at 34.

According to Plaintiff, on a typical day, she "tr[ied] to do paperwork and move around." *Id.* at 31.  Plaintiff stated her depression caused her to not want to get out of bed, but on a good day she sometimes watched television before she went to lay down for three or four hours. *Id.* at 30, 36-37. In addition, Plaintiff elevated her feet several times a day, for about twenty minutes, "when they're swollen." *Id.* at 37.  Plaintiff stated she did not cook, though she could microwave food, and did not do any housework such as vacuuming, dusting, mopping, or the dishes. *Id.* at 32.

Plaintiff estimated that she could walk half a block, lift up to ten pounds, and sit for fifteen to thirty minutes. AR at 35.  She reported that reaching overhead and getting something out of a cupboard was difficult, and she was unable to bend over due to the pain in her neck and back. *Id.* at 38-39.  Plaintiff stated she got confused and "a hard time concentrating," but believed she could concentrate for about twenty minutes at a time before she had to take a break for thirty minutes to an hour. *Id.* at 30, 36.  Plaintiff said she "always had problems concentrating and understanding," and "people have to specify and explain things" before she understood. *Id.* at 62-63.

Plaintiff admitted that she once had an issue with methamphetamine abuse and stated, "I haven't touched any drugs for 10 years." AR at 30.  Plaintiff testified that her drug use was "a social thing," and not a habit. *Id.* at 64.

1    *Vocational Expert Testimony*

2         Vocational expert ("VE") Judith Najarian testified after Plaintiff.  The VE characterized

3    Plaintiff's past relevant work at the bar as a tap room attendant, unskilled, light work, and SVP 2.

4    AR at 44.  In addition, Plaintiff's work as a caregiver at a group home from 1995 to 1996 was

5    classified as a "house parent," semi-skilled, medium work, and SVP 3.  *Id.* at 48-49.  However, the

6    VE noted that Plaintiff "was involved in lifting patients and carrying them about three feet when she

7    was getting them dressed," and concluded Plaintiff performed this work at a "heavy," rather than

8    medium, level .  *Id.*

9         The ALJ asked the VE to consider a hypothetical individual, aged 43 to 47 years old, who

10   had a high school education and work experience similar to Plaintiff.  AR at 50.  The person could

11   "lift 20 pounds occasionally, 10 pounds frequently; stand and/or walk six hours per eight-hour

12   workday, sit six hours per eight-hour workday; [and] occasionally climb, balance, stoop, kneel,

13   crouch, crawl. . ."  *Id.*  Further, the individual was "limited to simple, routine-type work" that

14   required no exposure to crowds of people and no more than occasional contact with the general

15   public.  *Id.*  The VE opined such a person was not capable of performing Plaintiff's past relevant

16   work but could perform work in the national economy.  The VE named the following in positions as

17   examples: flagger, DOT 372.667-022, light, SVP 2; press operator within the textile industry, DOT

18   363.685-101, light, SVP 2; and dry cleaner, DOT 589.685-038, light, SVP 2.  *Id.* at 50-52.

19        Next, the ALJ asked the VE to consider the same individual, with changes to the exertional

20   limitations.  The individual could lift and carry ten pounds frequently and five pounds occasionally,

21   and stand or walk two hours in an eight-hour day.  AR at 52-53.  The VE confirmed that this would

22   fall under "unskilled, sedentary" work, which would not be affected much by the postural limitations

23   set forth by the ALJ.  *Id.* at 53.  The VE observed limited jobs would be available because jobs either

24   require public contact or are "in a setting where there's a lot of people around . . . working."  *Id.*

25   However, the VE stated sedentary work may be available, such as a nut sorter, DOT 521.687-086; a

26   cuff folder, DOT 685.687-014; and escort vehicle driver, DOT 919.633-022.  *Id.* at 54-55.

27        The VE opined there would be no work available if an individual needed to lie down three or

28   four hours a day, stand a half hour before changing positions, walk a half hour lift, ten pounds and sit

for fifteen minutes.  AR at 55-56.  Likewise, no work would be available if "two-thirds of the day

there would be difficulties with [maintaining social functioning] and additional difficulties in

maintaining concentration, persistence, or pace . . . at a moderate level."  *Id.* at 56-57.  The VE

concluded an individual could not work if she could lift up to ten pounds occasionally or frequently,

was limited in repetitive activities, and had the need for frequent rest breaks or ability.  *Id.* at 57-58.

C.   Third Party Statement

Leonard Helley, Jr., Plaintiff's roommate, completed a third party "function report" on April

7, 2007.  AR at 176-83.  Mr. Helley reported that Plaintiff "eats, watches TV, [does] light

housekeeping, [and] naps" during the day.  *Id.* at 176.  Her hobbies included watching television, and

visiting with her son and friends.  *Id.* at 180.  Mr. Helley stated that Plaintiff needed reminders to

shower, put on fresh clothes, and take medication.  *Id.* at 178.  He stated Plaintiff was able to make

simple meals every day, but did not cook as in the past.  *Id.*

Mr. Helley stated Plaintiff went outside five to seven times per month, and would either ride

in a car or use public transportation.  AR at 179.  He reported Plaintiff went shopping for groceries

once per month, for about thirty to forty minutes.  *Id.*  Mr. Helley stated Plaintiff no longer could ride

on the back of a motorcycle, and "rarely leaves home except to see doctors, therapists."  *Id.* at 181.

According to Mr. Helley, Plaintiff's conditions affect her sleep because of "body aches, back

aches, leg cramps, [and] nightmares."  *Id.* at 177.  He stated she had severe nightmares and woke up

frequently at night.  *Id.* at 182.  Also, Mr. Helley believed Plaintiff's condition affected her ability to

lift, squat, bend, stand, walk, knee, talk, climb stairs, complete tasks, concentrate, understand, or

follow instructions.  *Id.* at 180.  He estimated Plaintiff was able to lift fifteen pounds, and walk a

quarter to a half of a mile before needing to rest for five to ten minutes.  *Id.*

Mr. Helley believed Plaintiff could not handle her own money because she did "not

concentrate well or prioritize."  *Id.* at 177.  He reported Plaintiff could pay attention for twenty to

thirty minutes, but did not finish things she started.  *Id.* at 181.  Mr. Helley stated Plaintiff was

"easily overwhelmed by too much information."  *Id.*  Further, Mr. Helley opined Plaintiff was not

able to handle stress at all because it "cause[d] anxiety, severe body ache, [and] acne."  *Id.* at 182.

He stated Plaintiff was able to handle small changes, but abrupt changes easily overwhelmed her.  *Id.*

8

1    On October 19, 2008, Mr. Helley wrote a letter in which he stated, "In addition to mental and

2    emotional demons, I have watched her battle physical ailments…I have witnessed days on end,

3    where just moving across a room would cause pain."  AR at 191.

4    D.   The ALJ's Findings

5    Pursuant to the five-step process, the ALJ determined Plaintiff engaged in substantial gainful

6    activity since her application date of April 20, 2006.  AR at 10.  Second, the ALJ found Plaintiff has

7    the following severe impairments: "degenerative disc disease of the cervical spine, depression with

8    psychotic features and schizoaffective disorder."  *Id*.  These impairments did not meet or medically

9    equal a listing.  *Id.* at 11.  The ALJ determined Plaintiff had the following residual functional

10   capacity ("RFC"): "to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or

11   walk 6 hours out of an 8-hour day, sit 6 hours out of an 8-hour workday, occasionally climb, balance,

12   stoop, kneel, crouch, and crawl, and can perform simple routine work with no more than

13   occasionally contact with the general public."  *Id.* at 12.  In addition, Plaintiff could not perform

14   "work exposing her to crowds of people."  *Id*.  Plaintiff had no past relevant work, but with this RFC

15   the ALJ concluded Plaintiff was capable of performing work that existed in significant numbers in

16   the national economy.  *Id.* at 14.  Therefore, the ALJ concluded Plaintiff was not disabled as defined

17   by the Social Security Act.  *Id.* at 15.

**DISCUSSION AND ANALYSIS**

19   A.   The ALJ did not err at step two of his inquiry.

20   The inquiry at step two is a *de minimus* screening for severe impairments "to dispose of

21   groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) citing *Bowen v. Yuckert*,

22   482 U.S. 137, 153-54 (1987).  The purpose is to identify claimants whose medical impairment makes

23   it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*,

24   482 U.S. at 153 (1987).  At step two, a claimant must make a "threshold showing" that (1) she has a

25   medically determinable impairment or combination of impairments and (2) the impairment or

26   combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

27   Thus, the burden of proof is on the claimant to establish a medically determinable severe

28

9

1    impairment.  *Id.*; *see also Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009)

2    ("The burden of proof is on the claimant at steps one through four…").

3         At step two, the ALJ determined Plaintiff had a severe impairment of "depression with

4    psychotic features."  AR at 10. Plaintiff asserts the ALJ failed to provide clear and convincing

5    reasons to reject her diagnosis of "major depressive disorder, severe, with psychotic features."  (Doc.

6    14 at 4).  Plaintiff explains that according to the *DSM-VI,*

7         If the treating doctors assess the MDD as "Severe With Psychotic Features" the person
         experiences hallucinations or delusions.  Psychoses may develop in about 15% of those
8        with major depressive disorder.  The presence of delusions and hallucinations often
         interfere with a person's ability to make sound judgments about consequences of their
9        actions and this may put them at risk for harming themselves.  Psychotic symptoms are
         serious and a person in this condition needs immediate medical attention and possibly
10       hospitalization.

11   *Id.* (internal quotation marks omitted).  Plaintiff concludes that with this diagnosis, her treating

12   physicians have opined that "she has little or no ability to function and her hallucinations often

13   interfere with her ability to make sound judgments."  *Id.*  In this manner, Plaintiff seems to equate

14   Plaintiff's diagnosis with a medical opinion regarding her symptoms.  However, a diagnosis is not

15   entitled to equal treatment as a medical opinion, which is a "statement[] from physicians and

16   psychologists or other acceptable medical sources that reflect[s] judgments about the nature and

17   severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still

18   do despite impairment(s), and your physical and mental restrictions."  20 C.F.R. § 416.927(a)(2).

19   Moreover, the diagnosis of an impairment is not sufficient to sustain a finding of a disability.  *Key v.*

20   *Heckler*, 754 F.2d 1525, 1549 (9th Cir. 1985); 20 C.F.R. § 416.925(d) (an impairment cannot meet a

21   listing based only on a diagnosis). Previously, this Court explained: "A mere recitation of a medical

22   diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work

23   activities." *Nottoli v. Astrue*, 2011 U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011); *Huynh*

24   *v. Astrue*, 2009 U.S. Dist. LEXIS 91015, at *6 (E.D. Cal. Sept. 30, 2009).

25        Notably, the ALJ discussed Plaintiff's "long history of mental health treatment" and observed

26   she was diagnosed with a "major depressive disorder, recurrent episode severe with psychotic

27   [symptoms]."  AR at 10.  Further, the ALJ discussed the findings of the consultative examiner and

28   concluded Plaintiff suffered a severe mental impairment.  Even if the Court were to find the ALJ

1  erred in naming the precise mental impairment diagnosed, any error designating a specific

2  impairment at step two was harmless.  *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)

3  (holding that any error in omitting an impairment from the severe impairments identified at step two

4  was harmless where the step was resolved in the claimant's favor).  Here, step two was resolved in

5  Plaintiff's favor because the ALJ found her "depression with psychotic features" was a severe

6  impairment.  Thus, there was no prejudice to Plaintiff at step two.

7  B.   The ALJ did not err in evaluating Plaintiff's credibility.

8      Plaintiff asserts the ALJ "failed to provide clear and convincing reasons to reject [her]

9  subjective symptom testimony.  (Doc. 14 at 9).  In evaluating credibility, an ALJ must determine

10  first whether objective medical evidence shows an underlying impairment "which could reasonably

11  be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028,

12  1035-36 (9th Cir. 2007), quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991).  Here, the

13  ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to produce

14  the alleged symptoms."  AR at 13.  However, the ALJ determined Plaintiff's "statements concerning

15  the intensity, duration and limiting effects of [her] symptoms are not entirely credible."  *Id.* at 15.

16      An adverse finding of credibility must be based on clear and convincing evidence where there

17  is no affirmative evidence of a claimant's malingering and "the record includes objective medical

18  evidence establishing that the claimant suffers from an impairment that could reasonably produce the

19  symptoms of which he complains."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160

20  (9th Cir. 2008).  An ALJ may consider many factors when assessing a claimant's credibility.  *See*

21  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  Factors an ALJ may consider include,

22  "at least," a claimant's reputation for truthfulness, inconsistencies in testimony, treatment the

23  claimant received, and testimony from physicians and third parties.  *Thomas v. Barnhart*, 278 F.3d

24  947, 958-59 (9th Cir. 2002); 20 C.F.R. § 416.929.  Here, the ALJ considered the treatment Plaintiff

25  received, her noncompliance with the treatment, and the medical evidence.  *See* AR at 13.

26      *Treatment received*

27      In assessing Plaintiff's credibility regarding her subjective symptoms, the ALJ may consider

28  "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 416.929(c).  The

11

treatment Plaintiff received, especially when conservative in nature, is a legitimate consideration in a credibility finding. *See Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged). The Ninth Circuit has "indicated that evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

Here, the ALJ noted Plaintiff "has not received treatment consistent with a chronic pain syndrome such as biofeedback, acupuncture, use of a TENS unit, physical therapy, or attendance at a pain management clinic." AR at 13. This was a proper consideration in rejecting Plaintiff's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (the ALJ properly inferred that the claimant's pain was not completely disabling as he reported in light of the fact that he did not seek an aggressive treatment program). Further, the ALJ observed, "In May 2007, the claimant was reportedly doing well on her medications, and her anxiety and depression were well controlled." AR at 13. Plaintiff asserts the ALJ "grossly isolated the record" by limiting the observation to May 2007. (Doc. 14 at 13). However, the treatment notes indicate that in March 2007, Plaintiff reported her Zoloft was "working fairly well." *Id.* at 246. In April 2007, Plaintiff reported she was "doing well," her "anxiety [was] under control fairly well" and her auditory hallucinations were "under control and tolerable." *Id.* at 242. Similarly, on May 22, 2007, Plaintiff reported she was "doing well on her medication" and that she felt her anxiety was in control and depression was well. *Id*. at 244, 423.

When an impairment "can be controlled effectively with medication," the impairment cannot be considered disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Consequently, the treatment Plaintiff received and its effectiveness were valid considerations by the ALJ in rejecting Plaintiff's subjective complaints.

*Noncompliance with treatment*

The Ninth Circuit stated, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, noncompliance with a prescribed

course of treatment is clear and convincing reason for finding a Plaintiff's subjective complaints lack credibility. *Id.*; *see also Bunnell*, 947 F.2d at 346.

In this case, the ALJ found "there is evidence that the claimant has not been entirely compliant in taking prescribed medications or in following recommendations, which suggests that the symptoms may not have been as limiting as the claimant has alleged [citations].  The claimant cancelled or failed to show up for doctor appointments on a number of occasions."  AR at 13 (citations omitted).  This assessment is supported by the record.  For example, in October 2006, Dr. Soo Chun indicated Plaintiff was "occasionally" compliant with her medication.  *Id.* at 251.  Plaintiff argues that her noncompliance can be attributed to her mental impairment because "[t]he fact that [she] would miss some doctors appointments is actually consistent with her symptomolgy."  (Doc. 14 at 13), citing *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  In the case of a mental health disorder, failure to seek treatment may be an unfortunate result of the disorder.  *Nguyen*, 100 F.3d at 1465.

The Ninth Circuit noted the symptoms of depression are often not recognized, making 'the fact that a claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day" an improper basis for rejecting an opinion.  *Nguyen*, 100 F.3d at 1465. In so holding, the Court adopted an observation from the Sixth Circuit that a claimant "may have failed to seek psychiatric treatment from his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Id.*, citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  However, Plaintiff's treatment history is not comparable to the claimant in *Nguyen*, who neither sought nor received *any* mental health treatment prior to a consultative examination.  Here, Plaintiff received therapy and treatment from Fresno County Mental Health, but the ALJ observed several notations that Plaintiff failed to keep her appointments.  AR at 13.  Therefore, the fact that Plaintiff was "not entirely compliant" was a clear and convincing reason for rejecting her subjective complaints.

Given the considerations made by the ALJ and the citations to the medical record in support thereof, the ALJ made "a credibility determination with findings sufficiently specific to allow [the] reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and

13

1  did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th

2  Cir. 2004).

3  C.   The ALJ properly evaluated Mr. Helley's third party statement.

4      The ALJ must consider statements of "non-medical sources" including spouses, parents, and

5  persons in determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1513(d)(4); *see also*

6  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is

7  disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work.").

8  As a general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects

9  ability to work is competent evidence, and therefore cannot be disregarded without comment."

10  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis and internal citations omitted).  To

11  discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the

12  opinion of the witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

13      Plaintiff asserts the ALJ "failed to provide any germane reasons to reject the third party

14  statements of Ms. Pharris' friend Leonard Helley." (Doc. 14 at 13).  The ALJ observed that, in letter

15  from 2008, Mr. Helley "emphasizes the claimant's mental and physical symptoms but does not

16  provide information about the claimant's remaining abilities in spite of her impairments."  AR at 13.

17  However, the ALJ noted also that Mr. Helley discussed Plaintiff's abilities in the 2007 statement,

18  and the ALJ used these observations.  *Id.* at 13. Though the ALJ did not discuss *all* of the statement

19  provided by Mr. Helley, the remainder of his allegations mirror those of Plaintiff, such as her

20  anxiety, limited ability to concentrate, nightmares, and severe pains.  *Compare, e.g.,* AR at 176-82

21  *with* AR at 30, 62-63.  An ALJ "need not discuss *all* evidence presented," but instead must only

22  "explain why significant probative evidence has been rejected."  *Vincent v. Heckler*, 739 F.2d 1393,

23  1394-95 (9th Cir. 1984) (internal quotation marks and citation omitted).  Because Mr. Helley's

24  statement provided no new evidence, the remainder of the statement was not probative, and the

25  ALJ's discussion of Mr. Helley's statement was not an error.

26  D.   Plaintiff's RFC was supported by substantial evidence.

27      The ALJ concluded Plaintiff had the ability to perform "simple routine work with no more

28  than occasional contact with the general public" and no exposure to crowds of people.  AR at 12.

14

Plaintiff asserts that the ALJ "did not state where he came up with his mental residual functional

capacity assessment," and "[t]he inference is that the ALJ credited the assessment of the non-

examining state agency doctor since the ALJ's limitations match those assessed by the state agency."

(Doc. 14 at 7).  Therefore, Plaintiff argues her RFC was not supported by substantial evidence.

No treating physician offered an assessment of Plaintiff's mental RFC.  However, the opinion

of an examining physician may be substantial evidence when the opinion is based upon independent

clinical findings. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d

1144, 1149 (9th Cir. 2001).  In addition, the opinion of a non-examining physician "may serve as

substantial evidence when they are supported by other evidence in the record and are consistent with

it." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995).  Here, following examination and

cognitive testing, Dr. Damania opined Plaintiff was "able to understand, carry out and remember

three and four step job instructions."  AR at 229.  Likewise, non-examining physician Dr. Rivera-

Miya concluded Plaintiff was "able to understand and remember short [and] simple instructions." *Id.*

at 229.  Notably, both opinion are consistent with Reasoning Level 2 requirements.

In the *Dictionary of Occupational Titles*,[2] each job description includes a General

Educational Development ("GED") definition that "embraces those aspects of education (formal and

informal) which are required of the worker for satisfactory job performance."  *Salas v. Astrue*, 2011

U.S. Dist. LEXIS 69620 at *16 (E.D. Cal. June 29, 2011), quoting *Grigsby v. Astrue*, 2010 U.S. Dist.

LEXIS 5465 (C.D. Cal. Jan. 22, 2010).  The GED scale includes a scale for "reasoning

development," which ranges from Level 1 (low) to Level 6 (high).  *Id.*  Reasoning Levels 1 and 2

require the following cognitive functioning:

> Level 1:  Apply commonsense understanding to carry out simple one- or two-step
> instructions.  Deal with standardized situations with occasional or no variables in or
> from these situations encountered on the job.
>
> Level 2:  Apply commonsense understanding to carry out detailed but uninvolved
> written or oral instructions.  Deal with problems involving a few concrete variables in

---

[2] The *Dictionary of Occupational Titles* ("DOT") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).

15

1  or from standardized situations.

2  *DOT*, Appendix C, Section III.  A limitation to three and four step instructions is consistent with jobs

3  requiring Reasoning Level 2.  *Burns v. Astrue*, 2010 U.S. Dist. LEXIS 123742 at *22 (C.D. Cal.

4  Nov. 18, 2010); *Smith v. Astrue*, 2011 U.S. Dist. LEXIS 76161 at *19 (C.D. Cal. July 13, 2011).

5  Similarly, limitations to "simple" and "routine" tasks are consistent with Reasoning Level 2.  *See,*

6  *e.g., Lara v. Astrue*, 305 Fed. Appx. 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are

7  elementary. . . and someone able to perform simple, repetitive tasks is capable of doing work

8  requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs"); *Hackett v.*

9  *Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (holding that a claimant limited to "simple and

10  routine work tasks" could perform jobs requiring Reasoning Level 2); *Money v. Barnhart*, 91 Fed.

11  Appx. 201, 215 (3d Cir. 2004) (finding an RFC limiting the claimant to "simple, routine tasks" was

12  consistent with work requiring Reasoning Level 2).  Therefore, Plaintiff's limitation to "simple

13  routine work" was consistent with the opinions of Dr. Damania and Dr. Rivera-Miya, and the

14  opinions are substantial evidence in support of the RFC.

15  **CONCLUSION**

16  Here, the ALJ properly evaluated the medical evidence and determined Plaintiff suffered

17  from a severe mental impairment.  The ALJ properly considered the third-party statement and the

18  adverse credibly determination regarding Plaintiff's subjective complaints was supported with clear

19  and convincing reasons.  Therefore, the ALJ's determination of the evidence must be upheld.  *Burch*

20  *v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one

21  rational interpretation, it is the ALJ's conclusion that must be upheld.").

22  Further, with an RFC of "simple routine work," the vocational expert identified jobs in the

23  national economy Plaintiff could perform, including flagger (DOT 372.667-022), press operator

24  (DOT 363.685-010), and dry cleaner (DOT 589.685-038).  Notably, these jobs require Reasoning

25  Level 2, which is consistent with the opinions of Dr. Damania and Dr. Dr. Rivera-Miya.  Therefore,

26  the ALJ's conclusion that Plaintiff was not disabled was based upon proper legal standards and is

27  supported by substantial evidence.

28  ///

Accordingly, **IT IS HEREBY ORDERED**:

1.     Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is **DENIED**; and

2.     The Clerk of Court IS DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Diana Pharris.

IT IS SO ORDERED.

Dated:   **September 2, 2011**                                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE

17